[Cite as *Brown v. Lincoln Hts.*, 195 Ohio App.3d 149, 2011-Ohio-3551.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                                        |     |                                        |
| -------------------------------------- | --- | -------------------------------------- |
| BROWN,                                 | :   | APPEAL NOS. C-100699                    |
|                                        |     | C-100721                               |
| Appellant and Cross-Appellee,          | :   | TRIAL NO. A-0902852                     |
| v.                                     | :   | *D E C I S I O N.*                     |
| VILLAGE OF LINCOLN HEIGHTS,            | :   |                                        |
| Appellee and Cross-Appellant.          | :   |                                        |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded in C-100699; Affirmed in C-100721

Date of Judgment Entry on Appeal:  July 20, 2011

Gerald L. Nuckols, for appellant and cross-appellee.

Surdyk, Dowd & Turner Co., L.P.A., Jeffrey C. Turner, Dawn M. Frick, and Joshua R. Schierloh, for appellee and cross-appellant.

FISCHER, Judge.

{¶ 1} Plaintiff-appellant and cross-appellee, Addie Brown, filed suit against defendant-appellee and cross-appellant, the village of Lincoln Heights, asserting a

claim of negligence after Brown was injured at a community festival in the village. Brown alleged that the village had been negligent in permitting a hazard on the festival grounds and in failing to warn of the hazard. The village filed a motion for summary judgment, arguing that it was entitled to both governmental immunity under R.C. 2744.01 et seq. and recreational-user immunity under R.C. 1533.181. The trial court denied the village's motion on the grounds of governmental immunity after concluding that there existed genuine issues of material fact on whether the village was entitled to that immunity. But the court granted the village's motion for summary judgment based on its assertion of recreational-user immunity after determining that it was entitled to the protections found in R.C. 1533.181.

{¶ 2} Brown now appeals from the trial court's entry granting the village's motion for summary judgment on the basis of recreational-user immunity under R.C. 1533.181. In her appeal, she presents one assignment of error. She argues that the affirmative defense of recreational-user immunity, upon which the judgment was based, was not timely raised in accordance with Civ.R. 8(C). We agree and reverse the court's decision to grant summary judgment on this ground.

{¶ 3} In a cross-appeal, the village contests the trial court's denial of summary judgment on the assertion of governmental immunity under R.C. Chapter 2744. Generally, the denial of a motion for summary judgment is not a final, appealable order. But it is reviewable when there is, as here, an otherwise final, appealable order entered in the case. Further, R.C. 2744.02(C) states that an order denying a political subdivision the benefit of immunity from liability is a final order,[1] and consequently this court has jurisdiction over the cross-appeal.

---

[1] See R.C. 2744.02(C).

{¶ 4} The village presents two assignments of error in its cross-appeal. It argues that the trial court erred in denying summary judgment under R.C. Chapter 2744 and that the trial court erred in failing to determine whether the village had breached a duty of care to Brown so as to invoke the exception to immunity under R.C. 2744.02(B)(2). We overrule both assignments of error and affirm the trial court's denial of summary judgment under R.C. Chapter 2744 because there are issues of material fact that must first be presented to a jury for determination.

### *Factual Background*

{¶ 5} On August 31, 2008, Brown attended the Lincoln Heights Day Festival and was injured when she tripped and fell while crossing an empty lot that had been used for parking and providing services for festival workers. Although she had rented a booth at the festival, Brown had not been working at her booth prior to or at the time of her injury. Rather, she had purchased bread from another booth and was en route to deliver it to her daughter's booth when she tripped over a grounding rod and attached wire and fell, injuring her wrist. Both the grounding rod and attached wire had been placed in the ground for purposes of providing electricity to the festival booths. Although the grounding rod had been permanently implanted in the ground, the wire was capable of being removed following each year's festival.

{¶ 6} Brown asserted that the lot in which her injury occurred was part of the festival area held open to the public and that the village had provided no warning or indication that a hidden danger existed on the lot. Brown additionally presented an affidavit from Christina Brooks, a patron of the festival, that corroborated Brown's statement that the area in which her injury occurred had not been cordoned off. But

Ernest McCowen Jr., a former police chief of the village and a member of the festival committee, stated in his deposition that the area at issue had been cordoned off with orange cones and police tape. McCowen had been responsible for setting up the booths and attaching the wire to the grounding rod.

### Standard of Review

{¶ 7} In accordance with Civ.R. 56(C), the entry of summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party carries the burden to show that no genuine issue of fact exists, and all reasonable inferences should be construed most strongly in favor of the nonmoving party.[2] An appellate court reviews a trial court's ruling on a motion for summary judgment de novo.[3]

### Recreational-User Immunity

{¶ 8} In her sole assignment of error, Brown argues that the trial court erred in granting the village's motion for summary judgment. She asserts that the village waived the affirmative defense of recreational-user immunity under R.C. 1533.181 by failing to raise the defense in its answer. We agree.

{¶ 9} In its answer, the village included the statement that "[p]laintiff's claims are precluded by virtue of the immunity provided by O.R.C. §§ 2744.01 et seq, *and all*

---

[2] Civ.R. 56(C); *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 120, 413 N.E.2d 1187.
[3] *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

*other applicable statutory immunity."*[4] The village argues that this statement was sufficient to raise and preserve the affirmative defense of recreational-user immunity.

{¶ 10} Case law on the immunity doctrine has established that immunity is an affirmative defense under Ohio law.[5] Civ.R. 8(C) requires that a defendant set forth any affirmative defense in its answer. The failure to timely raise an affirmative defense, other than those listed in Civ.R. 12(B), either in the answer or by amendment under Civ.R. 15, results in a waiver of the defense.[6] Here, we determine that the village did not timely raise the defense of recreational-user immunity in its answer to the complaint under Civ.R. 8 and that it did not move to amend to include it as a defense.

{¶ 11} The village contends that the language "and all other statutory immunity" contained in its answer was sufficient to put Brown on notice of what defenses were being asserted, including recreational-user immunity. We disagree. Pleadings of the parties need only be made in generic terms, and it is acceptable to make fair interpolations of more specific defenses that might naturally be included in an asserted defense.[7] However, it is not acceptable to extrapolate from an asserted affirmative defense something that is simply not stated in the pleadings.[8] In this case, neither the term "recreation" nor the term "user" was used; thus it would be inequitable to conclude that the phrase "and all other applicable statutory immunity" served as adequate notice that recreational-user immunity was going to be raised as a defense. To conclude otherwise would put an onerous burden on the opposing party to

---

[4](Emphasis added.) Defendant's answer.
[5] *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 97, 706 N.E.2d 1261.
[6] *Reed v. Multi-Cty. Juvenile Sys.*, 7th Dist. No. 09 CO 27, 2010-Ohio-6602, at ¶ 40, citing *Jim's Steak House, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 20, 688 N.E.2d 506.
[7] Id. at ¶ 47, citing *Gallagher v. Cleveland Browns Football Co.*(1996), 74 Ohio St.3d 427, 432-433, 659 N.E.2d 1232.
[8] Id.

determine which of the many statutory immunities might be "applicable" in a given case.

{¶ 12} The dissent cites two cases in support of its argument that inclusion of the phrase "and all other applicable statutory immunity" in the answer was sufficient to raise the defense of recreational-user immunity. But each of these cases is easily distinguishable. *Gallagher v. Cleveland Browns Football Co.*,[9] discussed in detail in the dissent, involved two versions of the same defense, specifically primary and secondary assumption of the risk. In that case, "assumption of the risk" appeared in the answer, but in the case at bar, neither "recreational" nor "user" was used. And *Reed v. Multi-Cty. Juvenile Sys.*[10] involved two statutes contained within the same chapter of the Revised Code (R.C. Chapter 2744).

{¶ 13} In contrast, at issue in this case are two entirely different types of immunity that are not found in the same statute and that are not even contained in the same chapter of the Revised Code cited in the village's answer (R.C. 2744.01 et seq.). It is not reasonable to extrapolate recreational-user immunity from an assertion of governmental immunity and "all other applicable statutory immunity." Otherwise, a defendant could simply refer in an answer to "any affirmative defenses in Civ.R. 8, under the Ohio Revised Code, and the common law."

{¶ 14} Pursuant to Civ.R. 1(B), all rules of civil procedure "shall be construed and applied to effect just results by eliminating delay, unnecessary expense, and all other impediments to the expeditious administration of justice." If we were to affirm the granting of the village's motion for summary judgment, however, we would be acting in opposition to this fundamental principle. Allowing the broad phrase "all

---

[9] *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 659 N.E.2d 1232.
[10] *Reed*, 2010-Ohio-6602.

other applicable statutory immunity" to include any and all types of statutory immunity would then require the opposing party to delve into case law and all chapters in the Revised Code to determine what types of immunity might be "applicable." That extra effort would obviously result in delay and increased expenses. There are a myriad of types of immunity established as affirmative defenses either by the Revised Code or by the common law, none of which would this court consider to have been raised by the phrase at issue.[11] It would be impractical, inefficient, and expensive to require a party to research and address every possible type of immunity that might be raised as a defense.

{¶ 15} Furthermore, requiring that an affirmative defense be timely raised in the pleadings avoids surprise at trial.[12] Not requiring a defendant to timely raise an affirmative defense would allow for the employment of deceitful and delaying tactics by parties attempting to ambush opponents by catching them unprepared. This too would contravene Civ.R. 1. Moreover, the village made no effort in this case to amend its answer, although it could have easily done so.

{¶ 16} We hold that the village failed to timely raise the affirmative defense of recreational-user immunity and accordingly waived the right to assert that defense. We therefore sustain Brown's assignment of error and reverse the trial court's granting of summary judgment on the basis of recreational-user immunity under R.C. 1533.181.

---

[11] See, e.g., R.C. 1513.372, 1541.10, 2305.40, and 3739.17; See also *Wilson v. Neu* (1984), 12 Ohio St.3d 102, 465 N.E.2d 854, and *Brodie v. Summit Cty. Children Servs. Bd.* (1990), 51 Ohio St.3d 112, 554 N.E.2d 1301.
[12] *Reed*, 2010-Ohio-6602, at ¶ 42.

*Governmental Immunity*

{¶ 17} As we have stated, the village argues in two assignments of error in its cross-appeal that the trial court erred in denying summary judgment under R.C. Chapter 2744, and that the trial court erred in failing to determine whether the village had breached a duty of care to Brown so as to invoke the exception to immunity under R.C. 2744.02(B)(2). We address these assignments together.

{¶ 18} It is uncontested that the village is a political subdivision; therefore R.C. Chapter 2744 is applicable. R.C. 2744.02(A)(1) grants a political subdivision general immunity from civil liability when an injury results from the performance of a governmental or proprietary function, subject to the exceptions set forth in R.C. 2744.02(B).[13] To determine a political subdivision's liability under this statute, one must conduct a three-step analysis.[14] The first step is to determine whether the act at issue, in this case the sponsoring of a festival, is a governmental or a proprietary function.[15]

{¶ 19} R.C. 2744.01(C) defines a governmental function as a function performed by a political subdivision that is "(a) [a] function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement; (b) [a] function that is for the common good of all citizens of the state; [or] (c) [a] function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons."

---

[13] R.C. 2744.02(A)(1).
[14] *Ryll v. Columbus Fireworks Display Co., Inc.*, 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, ¶ 19.
[15] Id. at ¶ 20.

{¶ 20} The sponsoring of a festival is not one of the delineated governmental functions. The village was not required by the state as a sovereign to sponsor a festival. And the act of sponsoring the festival was not done for the common good of all citizens of Ohio. Rather, it was performed for the particular benefit of the village and its current and past inhabitants.[16] Last, although the sponsorship of a festival does promote public peace, health, safety, and welfare, it is not a function in which nongovernmental persons are not customarily engaged.[17] We therefore hold that there was not a governmental function involved in this case. Private organizations, including religious organizations, often sponsor festivals, and private for-profit entities like radio stations do too, so festival sponsorship can hardly be considered governmental for the purpose of R.C. 2744.01(C).

{¶ 21} R.C. 2744.01(G) defines a proprietary function as one that promotes public peace, health, safety, and welfare, that involves activities in which nongovernmental persons are customarily engaged, and that is not described as a governmental function in section (C) of the statute. As previously discussed, this description is more fitting for the function that the village was performing in this case. The village attempts to equate its activities with examples of governmental functions listed in R.C. 2744.01(C)(2), including regulation of the use of and maintenance of public ground, but these comparisons are flawed and lack merit. We therefore agree with the trial court's determination that the coordination and operation of the festival was a proprietary function.

{¶ 22} The second step of the analysis involves a determination as to whether any of the exceptions to the general rule of immunity, contained in R.C. 2744.02(B)

---

[16] See *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St. 3d 551, 559, 733 N.E.2d 1141.
[17] *Ryll*, 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, at ¶ 24.

apply.[18]  Under R.C. 2744.02(B)(2), immunity is removed and a political subdivision is liable for damages resulting from harm caused by the negligence of its employees with respect to the performance of proprietary functions.  As we have already determined that the sponsoring of the festival was a proprietary function, this exception is applicable if there was negligence on the part of the village.

{¶ 23} A determination as to whether the village was negligent depends on the duty owed by the village to Brown.  In a premises-liability case like the one at hand, the relationship between the occupier of the premises and the injured party determines the duty owed.[19]  Ohio adheres to the common-law classifications of invitee, licensee, and trespasser regarding the status of a person entering the property of another.[20]

{¶ 24} A licensee is a person who enters the premises of another by permission for his own pleasure or benefit, and not by invitation.[21]  Like a trespasser, a licensee has a right to be free from willful, wanton, or reckless conduct.[22]  But a licensee is owed an extra duty of protection by a landowner in that a licensee must be warned of hidden dangers.[23]  If the landowner knows of the presence of such a danger, the licensee must be warned if the landowner should reasonably expect that the licensee will not discover the danger.[24]  In contrast, an invitee is a person who has rightfully come upon the premises of another by invitation for some purpose that is beneficial to the owner.  An invitee is owed a duty of ordinary care.[25]

---

[18] *Ryll* at ¶ 25.
[19] *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287.  See also *Hammer v. McKinnis*, 6th Dist. No. L-04-1054, 2004-Ohio-7158, at ¶ 7.
[20] *Gladon* at 315.
[21] *Hammer* at ¶ 7.
[22] Id. at ¶ 8.
[23] Id. at ¶ 9,
[24] Id.
[25] Id. at ¶ 7.

{¶ 25} The village contends that at the time of her injury, Brown was a licensee. If Brown was a licensee, the village had only the duty to refrain from willful or wanton misconduct and to warn her of hidden dangers. Brown, on the other hand, argues that she had been an invitee of the village, and that by failing to warn her of the grounding rod or to cordon off the area containing the rod, the village had breached the duty of ordinary care it owed to her. Festival patrons have previously been classified as invitees.[26] However, the status of an invitee is not absolute but is limited to the extent of the invitation. The invitee retains this status only while he is on a part of the property to which his invitation extends.[27]

{¶ 26} Thus, if Brown's injury occurred in an area to which she had been invited by the village, she would properly be classified as an invitee. But if Brown had ventured into an area not held open by the village as part of the festival grounds, her status would be that of a licensee. With respect to this material issue, the record contains conflicting evidence. As stated, Ernest McCowen provided deposition testimony that the area in which the injury occurred had been cordoned off from the general festival grounds. But Brown testified in her deposition that the area had not been cordoned off and that no warning had been posted. This conflicting evidence is relevant to a determination as to whether Brown was a licensee or an invitee. Further, once Brown's status is determined, the conflicting material evidence is also relevant to determine whether the village either complied with a duty of ordinary care or, in the alternative, warned Brown of a hidden danger. In this situation, genuine issues of material fact exist concerning Brown's status at the time of her injury.

---

[26] See *Stockhauser v. Archdiocese of Cincinnati* (1994), 97 Ohio App.3d 29, 646 N.E.2d 198.
[27] *Gladon* at 315.

{¶ 27} When the relevant facts are undisputed, the determination of a plaintiff's status is a question of law for the court to decide.[28]  However, when a plaintiff's status, and therefore the defendant's duty, depends on the resolution of conflicting evidence, as it does in this case, there is a question for the trier of fact.[29]  Here, viewing all evidence in the light most favorable to the nonmoving party, we must conclude that there are factual issues with respect to negligence that cannot be resolved as a matter of law.  We accordingly overrule the village's two assignments of error, and we affirm the court's denial of summary judgment on the ground of governmental immunity.

{¶ 28} In summary, in the appeal numbered C-100699, we reverse the trial court's grant of summary judgment on the basis of recreational-user immunity under R.C. 1533.181 and remand this case for further proceedings in accordance with law.  But because genuine issues of material fact exist concerning whether an exception to the general rule of immunity applies under R.C. 2744.02, in the appeal numbered C-100721, we affirm the trial court's denial of summary judgment on the basis of governmental immunity.

Judgment accordingly.

HILDEBRANDT, P.J., concurs.

HENDON, J., concurs in part and dissents in part.

---

[28] *Wiley v. Natl. Garages, Inc.* (1984), 22 Ohio App.3d 57, 62, 488 N.E.2d 915.
[29] Id.  See also *Hammer*, 2004-Ohio-7158, at ¶ 11.

HENDON, Judge, concurring in part and dissenting in part.

{¶ 29} I dissent from only the majority's decision to reverse the trial court's grant of summary judgment under the recreational-user immunity statute, R.C. 1533.181.

{¶ 30} The village asserts that it preserved the affirmative defense of recreational-user immunity in its answer through the assertion that the "[p]laintiff's claims are precluded by virtue of the immunity provided by O.R.C. §§ 2744.01 et seq., and all other applicable statutory immunity." I agree.

{¶ 31} The majority correctly states that the failure to raise an affirmative defense in the pleadings or in an amendment to those pleadings results in a waiver of that defense. But a party need not plead a defense with great specificity; rather, it is sufficient to plead in generic terms.[30]

{¶ 32} This principle is illustrated in *Gallagher v. Cleveland Browns Football Co.*[31] In *Gallagher*, the defendant had raised the defense of assumption of the risk in its answer. Following a jury verdict, in a motion for judgment notwithstanding the verdict, the defendant attempted to raise the related defense of primary assumption of the risk. The Ohio Supreme Court ultimately held that the defendant had waived the defense of primary assumption of the risk by not raising it any time prior to trial.[32] But notably, the court further held that by raising "assumption of risk" as an affirmative defense in its answer, the defendant had initially preserved the defense of primary assumption of the risk and that had the defendant raised that defense at any point in the litigation prior to trial, it would not have been waived. The court specifically

---

[30] *Reed v. Multi-Cty. Juvenile Sys.*, 7th Dist. No. 09 CO 27, 2010-Ohio-6602, at ¶ 47.
[31] *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d at 432, 659 N.E.2d 1232.
[32] Id. at 430.

stated, "[W]e must acknowledge that Civ.R. 8(C) simply requires a party to put forth 'assumption of the risk' as an affirmative defense without taking into account the significant distinction between primary and secondary assumption of risk."[33] The court distinguished this situation from the more common situation in which a defendant fails to raise an affirmative defense in its answer.[34]

{¶ 33} Furthermore, in *Reed v. Multi-Cty. Juvenile Sys.,* the Seventh Appellate District held that a failure to cite a specific statute did not constitute an automatic waiver of a defense contained in that statute, because "[w]aiver for that reason alone would dispose of the case on a technicality rather than on its merits."[35] Because the facts of *Reed* are not analogous, I discuss them generically. In *Reed*, the plaintiff had filed suit against a juvenile detention facility and its employees. In its answer, the detention facility argued that it was entitled to governmental immunity under R.C. 2744.01(C). But the answer failed to raise an immunity claim under R.C. 2744.03(A)(6) with respect to its employees. In a motion for summary judgment, the employees argued that they also were entitled to governmental immunity under this latter provision. The Seventh Appellate District ultimately determined that the employees had waived the defense of statutory immunity because they had failed to raise it in the answer.[36] But the court reached its conclusion based on the fact that the answer explicitly included the employees in certain defenses but not in others.[37] And had the answer not otherwise distinguished between the detention facility and its

---

[33] Id. at 433, fn 3.
[34] Id. at 433.
[35] *Reed*, 2010-Ohio-6602, at ¶ 48.
[36] Id. at ¶ 52.
[37] Id. at ¶ 49.

employees, the pleading of immunity under R.C. 2744.01(C) would have encompassed immunity under R.C. 2744.03(A)(6).[38]

{¶ 34} Similar to *Gallagher* and *Reed*, in this case the affirmative defense of recreational-user immunity was generically raised in the defendant's answer by the village's reference to immunity under R.C. Chapter 2744 and all other types of statutory immunity. And unlike the *Gallagher* case, the issue was then raised again with specificity in a motion for summary judgment. I cannot agree with the majority's conclusion that this broad reference to "all other applicable statutory immunity" put an onerous burden on Brown. In the specific factual situation involved in this case, very few types of immunity could be deemed applicable. Therefore, I believe that the village timely raised the affirmative defense of recreational-user immunity found in R.C. 1533.181 through the inclusion of the phrase "and all other applicable statutory immunity" in its answer.

{¶ 35} Civ.R. 8(F) states that pleadings are to be "construed as to do substantial justice." And the Ohio Supreme Court has declared that one of the purposes of the Civil Rules is to allow cases to be decided " ' "upon their merits, not upon pleading deficiencies." ' "[39] By reversing the trial court's decision, we do just the opposite. As the majority has noted, Civ.R. 1(B) states that the Ohio Rules of Civil Procedure "shall be construed and applied to effect just results by eliminating delay, unnecessary expense[,] and all other impediments to the expeditious administration of justice." In my opinion, this only reaffirms the notion that pleadings should be construed with

---

[38] Id. at ¶ 48-49.
[39] *State ex rel. Huntington Ins. Agency v. Duryee* (1995), 73 Ohio St.3d 530, 533, 653 N.E.2d 349, quoting *Patterson v. V & M Auto Body* (1992), 63 Ohio St.3d 573, 577, 589 N.E.2d 1306, quoting *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 297 N.E.2d 113.

justice in mind and that cases should be decided upon the merits, not on pleading deficiencies.

{¶ 36} I would not expand this discussion to include the allowance of dissimilar unnamed affirmative defenses under the precept of being "generally pleaded." For example, it is not sufficient in Ohio to state in one's responsive pleading that the defendant is entitled to all applicable affirmative defenses. Allowing this would set a dangerous precedent and manifest the concerns expressed by the majority. But that is not the case here, as the village is not attempting to assert any and all types of affirmative defenses, but rather only "all other applicable statutory immunity." Therefore, I am convinced that the village has not waived its right to raise recreational-user immunity, indisputably an example of statutory immunity, as an affirmative defense, and I would affirm the trial court's grant of summary judgment on that ground.