[Cite as *Monroe v. Troy Strawberry Festival, Inc.*, 2023-Ohio-650.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| SUSAN C. MONROE, ET AL. | : | |
| | : | |
| Appellees | : | C.A. No. 2022-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 21 CV 40 |
| | : | |
| TROY STRAWBERRY FESTIVAL, INC., ET AL. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 3, 2023

. . . . . . . . . . .

FRANK J. PATRIZIO, Attorney for Appellee

DAVID M. RICKERT, Attorney for Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant City of Troy ("Troy") appeals from the trial court's order denying Troy's motion for summary judgment based on sovereign immunity. For the following reasons, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

I.    Facts and Course of Proceedings

{¶ 2} On February 3, 2021, Susan Monroe and Rick Monroe filed a Complaint for Money Damages in the Miami County Court of Common Pleas against Troy and the Troy Strawberry Festival, Inc.   According to the allegations in the complaint, Susan was injured on June 3, 2017, when she fell as a result of stepping onto a broken curb piece in a curb cutout.   The fall happened during the Troy Strawberry Festival in an area where streets and sidewalks had been closed and were used as part of the festival.   The Monroes alleged that the Troy Strawberry Festival and Troy were negligent and breached their duty of ordinary care owed to the Monroes by "failing to properly maintain the curb that caused" Susan to fall.   The Monroes sought compensation for their injuries resulting from the fall.

{¶ 3} On February 15, 2022, Troy moved for summary judgment based on the defense of sovereign immunity.   The trial court overruled the motion, noting that Troy had failed to raise the affirmative defense of sovereign immunity under R.C. Chapter 2744 in its answer.   Troy subsequently filed a motion for leave to amend its answer to include this affirmative defense, which the trial court granted.   Troy then filed an amended answer, which included the sovereign immunity defense.

{¶ 4} On June 29, 2022, Troy re-submitted its motion for summary judgment based on the defense of sovereign immunity.   The Monroes filed a memorandum in opposition to the motion for summary judgment.   Attached to their memorandum was an affidavit of Rick Monroe, which stated, in part:   "While in attendance my wife and I were walking in

an unmarked pathway and while walking, the curb my wife walked upon let go, and she fractured her femur near the hip joint."

{¶ 5} On August 24, 2022, the trial court overruled Troy's motion for summary judgment. According to the trial court, "there is a triable issue whether Troy was engaged in a proprietary function when Plaintiffs allege they were harmed." Troy filed a timely notice of appeal.

II. The Trial Court Erred in Overruling Troy's Motion for Summary Judgment

{¶ 6} Troy's sole assignment of error states:

THE LOWER COURT ERRED IN FINDING THAT A SIDEWALK'S REGULATION OF USE, MAINTENANCE AND/OR REPAIR COULD, DURING A FESTIVAL, BE CONSTRUED TO BE A PROPRIETARY FUNCTION, SUBJECTING THE MUNICIPALITY TO POTENTIAL LIABILITY, RATHER THAN A GOVERNMENTAL FUNCTION IMMUNE FROM LIABILITY, AS EXPRESSLY PROVIDED IN ORC § 2744.01(C)(2) AND § 2744.02.

{¶ 7} Troy contends that the trial court erred in finding that Troy could have been engaged in a proprietary function when Susan Monroe was injured. According to Troy, the maintenance and repair of sidewalks can never be a proprietary function, because those functions are specifically included in the definition of "governmental function" in R.C. 2744.01(C)(2). The Monroes counter that, once Troy took on the proprietary function of conducting and sponsoring a festival, it was subject to liability pursuant to the exception

to sovereign immunity in R.C. 2744.02(B)(2) for any negligent acts of its employees performing a proprietary function.

{¶ 8} Pursuant to Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997). Appellate review of summary judgment is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997). "We review the judgment independently and without deference to the trial court's decision." (Citation omitted.) *Id.*

{¶ 9} With the foregoing standards in mind, we turn to the immunity issue. Determining "whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis." *Colbert v. City of Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7, citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000). The first tier "is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function." *Colbert* at ¶ 7, citing R.C. 2744.02(A)(1) and *Liming* at 556-557. The second tier "of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply." (Citation omitted.) *Id.* at ¶ 8. If the subdivision would be liable under R.C. 2744.02(B), then the third tier of the analysis requires a review of the defenses to liability

found in R.C. 2744.03. *Id.* at ¶ 9.

**{¶ 10}** The parties and the trial court acknowledge that Troy is immune from liability unless the Monroes can establish an exception to Troy's statutory immunity. The potential exceptions to Troy's immunity are listed in R.C. 2744.02(B)(1)-(5). The Monroes rely on the exception in R.C. 2744.02(B)(2), which provides:

> (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

> (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

**{¶ 11}** Given the express language of R.C. 2744.02(B)(2), the key issue is whether Susan Monroe's injuries were caused by Troy's negligent performance of a governmental function or of a proprietary function. In their complaint, the Monroes alleged, in part:

> "The Festival" is conducted in various parts of the City of Troy, and in 2017 the streets and sidewalks located at the intersections of Market Street and Main Street, commonly known as "the square", were closed and used as part of "The Festival".

> * * *

When attempting to cross the street on the square, Plaintiff Susan C. Monroe, fell when she stepped onto a broken curb piece located in the curb cutout of the southeastern part of the square

Defendants were negligent and breached their ordinary duty of ordinary care owed to Plaintiffs by failing to inspect the common areas, including but not limited to, "The Square" for hazards and dangerous conditions.

Defendants were negligent and breached their duty of ordinary care owed to Plaintiffs by failing to properly maintain the curb that caused Plaintiff Susan C. Monroe to fall.

Defendants were negligent and breached their duty of ordinary care owed to Plaintiffs by not warning "invitees", including Plaintiffs, of the hazardous conditions of the curbs located at "The Square."

Defendants were negligent and breached their duty of ordinary care owed to Plaintiffs by not establishing and identifying stable, planned and flush patron walkways and pathways for use during "the Festival."

Complaint, ¶ 5, 10-14

{¶ 12} In short, the Monroes allege that their injuries were caused by Troy's failure to repair a faulty curb on a sidewalk or street. Because we conclude that the maintenance of sidewalks and streets is a governmental function, the trial court erred in concluding there was a genuine issue of material fact as to whether the Monroes' injuries related to a proprietary function performed by Troy.

{¶ 13} R.C. 2744.01(C)(1) defines "governmental function" as "a function of a political subdivision that is specified in division (C)(2) of this section" or that satisfies any of the functions described in R.C. 2744.01(C)(1)(a)-(c). None of the functions in (a)-(c) are applicable to the facts before us. However, R.C. 2744.01(C)(2)(e) is applicable and provides that "[a] 'governmental function' includes, but is not limited to, the following: (e) '[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds[.]' "

{¶ 14} On the other hand, a "proprietary function" is defined in R.C. 2744.01(G)(1) as "a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following: (a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section; (b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(2) goes on to list specific functions that are considered proprietary functions, but none of those listed are applicable to the facts before us. Therefore, in order to establish that a proprietary function was involved in Susan Monroe's injuries, the Monroes would need to establish both of the requirements of R.C. 2744.01(G)(1)(a) and (b). Notably, one of these requirements is that the function is not one described in R.C. 2744.01(C)(2).

{¶ 15} In summary, the exception to sovereign immunity stated in R.C. 2744.02(B)(2) applies only to injuries caused by the negligent acts of employees relating to proprietary functions. But the maintenance and repair of streets and sidewalks are

governmental functions rather than proprietary functions. R.C. 2744.01(C)(2)(e). The fact that Troy was hosting a festival at the time Susan Monroe was injured did not change the fact that her injuries were caused by Troy's alleged failure to perform what was defined by statute as a governmental function.

{¶ 16} The trial court cited the following two cases in support of its conclusion that Troy was engaged in a proprietary function: *Brown v. Lincoln Hts.*, 195 Ohio App.3d 149, 2011-Ohio-3551, 958 N.E.2d 1280 (1st Dist.), and *Clemons v. Cardington*, 5th Dist. Morrow No. 2021 CA 0008, 2022-Ohio-513. The Monroes relied on the additional case of *Hacker v. Cincinnati*, 130 Ohio App.3d 764, 721 N.E.2d 416 (1st Dist.1998). But these cases are distinguishable.

{¶ 17} In *Brown*, the plaintiff attended the Lincoln Heights Day Festival and was injured when she tripped and fell while crossing an empty lot that had been used for parking and providing services for festival workers. *Brown* at ¶ 5. Specifically, the plaintiff tripped over a grounding rod and attached wire, which had been placed in the ground for purposes of providing electricity to the festival booths. *Id.* The First District underwent the three-step analysis of whether the village was exempt from liability under R.C. Chapter 2744. According to the Court, the sponsoring of a festival is not a governmental function under R.C. 2744.01(C), but instead is a proprietary function under R.C. 2744.01(G). Consequently, the Court went on to the second tier of the analysis and determined that immunity arguably was removed from the village under R.C. 2744.02(B)(2) for damages resulting from harm caused by the negligence of its employees with respect to the performance of proprietary functions. *Brown* is

distinguishable from the case before us, because the injuries there did not result from the city's failure to perform a function that was specifically defined by statute as a governmental function. Rather, the injuries were a result of wires that the governmental entity added specifically for the festival.

{¶ 18} Similarly, in *Cardington*, which cites the *Brown* decision, the Fifth District was faced with a plaintiff who alleged that she had fallen during a festival while stepping on a catch basin set within crumbling street pavement. The Fifth District stated, in part:

> [T]he record shows [defendant Village of Cardington] participated in the coordination and operation of the festival by blocking off roadways for use in the festival, cleaning up before and after the festival, and providing on-duty police and EMSA on standby. As such, viewing the record most strongly in favor of [the plaintiff], a genuine issue of material fact exists as to whether or not the level of participation by [defendant Village] in the coordination and operation of the festival rises to the level of a proprietary function.

*Cardington* at ¶ 19.

{¶ 19} We believe *Cardington* is distinguishable, because it involved a catch basin, or storm drain, rather than the street or sidewalk itself. Several prior cases have distinguished between issues involving the sewer or water system, which is a proprietary function, versus those involving maintenance of a sidewalk, which is a governmental function. *E.g., Main v. Lima*, 3d Dist. Allen No. 1-14-42, 2015-Ohio-2572, ¶ 21-24; *Georgantonis v. Reading*, 2020-Ohio-3961, 156 N.E.3d 1037, ¶ 15-19 (1st Dist.).

**{¶ 20}** Finally, in *Hacker*, 130 Ohio App.3d 764, 721 N.E.2d 416, a pedestrian was injured when he tripped over an unpainted curb in a parking garage located adjacent to the municipal baseball stadium. The First District concluded that the governmental entities were engaged in a proprietary function, operating a stadium parking garage. Therefore, if the plaintiff's injuries were caused by the negligent performance of the city's and county's employees, then R.C. 2744.02(B)(2) would apply to remove their sovereign immunity. *Hacker* is distinguishable from the facts before us, because the injuries there did not result from the failure to perform a function that was specifically defined by statute as a governmental function.

**{¶ 21}** We also note that the trial court failed to analyze the requirement that, in order to establish an exception to sovereign immunity, the plaintiffs' injuries had to have been caused by the alleged proprietary function performed by the governmental entity. We acknowledge that several previous decisions in other districts have concluded that that the holding of a festival constitutes a proprietary function. But the fact that a festival is being held at the time the injury occurs does not automatically establish that a failure to perform a proprietary function relating to the festival is what caused the injury. While we can imagine many scenarios where negligence on the part of city employees in performing their proprietary functions may cause injuries, those scenarios are not before us. Rather, we are faced with allegations that the Monroes were injured due to Troy's failure to maintain or repair a sidewalk or street. The function of maintaining or repairing a sidewalk or street is clearly defined by statute as a governmental function. R.C. 2744.01(C)(2)(e). The fact that the alleged failure to perform this governmental function

resulted in an injury which happened to occur during a festival does not change the classification of the function or the cause of the injury. The alleged cause of the injury was failing to perform a governmental function related to maintenance and repair of sidewalks and streets, not failing to perform a function particular to hosting a festival.

**{¶ 22}** The trial court erred in overruling Troy's motion for summary judgment based on the defense of sovereign immunity. The sole assignment of error is sustained.

III.    Conclusion

**{¶ 23}** Having sustained Troy's assignment of error, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

WELBAUM, P.J. and EPLEY, J., concur.